REDD *v.* STATE

No. 39900          January 9, 1956          84 So. 2d 425

*King & King,* Durant, for appellant.

*Wm. E. Cresswell,* Asst. Atty. Gen., Jackson, for appellee.

McGEHEE, C. J.

The appellant, Curtis Redd, was indicted and tried for the crime of murder, and was convicted of manslaughter and sentenced to serve a term of seven years in the state penitentiary. On this appeal he assigns two grounds for a reversal of the case; first, that the trial court erred in refusing to grant his requested peremptory instruction at the close of all of the evidence in the case, and second, that if mistaken in the first ground assigned, then the verdict is contrary to the overwhelming weight of the evidence and is contrary to law.

The proof discloses that Curtis Redd owned and operated a cafe in the City of Durant; that on Sunday morning, July 18, 1954, he went to the cafe and carried with him his pistol which he kept at his place of business during the day and kept at home at night; that before he had been at the cafe very long his wife, Eloise, came to the cafe "and got some beer and coca-cola, and I told her to come out of the drink box, and she caught me in the shirt like this (indicating), and I shoved her back and she fell"; that she tore his shirt when she caught hold of it, and that after she got up and went home he decided to go home and change shirts; that he had been busy and had not removed his pistol from his pocket, and that upon his arrival at the house the screen

door was hooked on the inside and he told Eloise to open the door; that she was sitting down with a piece of white cloth in her lap and that she got up and started unwinding it and got about 2 feet from the door and shot at him twice; that he then went up into a corner on the porch and that she shot two more times, one of the bullets having struck him in the shoulder and neck; that he then left to go around the south end of the house, walking rapidly, and that as he was about to pass a window she drew the pistol on him again, and that he then shot through the window at her, and that this was the only shot that he fired.

The appellant contends that he was entitled to a directed verdict under the rule announced in the case of Weathersby v. State, 165 Miss. 207, 147 So. 481, and the prior cases therein cited, which is that "where the defendant or the defendant's witnesses are the only eye-witnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the State or by the physical facts or facts of common knowledge." But we do not think that this rule is applicable in the instant case for the reason that immediately after the shooting the defendant stated to some of the State's witnesses that he fired twice, whereas he testified on the trial that he fired his pistol only one time. When he told the witnesses that he fired twice, they asked him to explain how that could be since there was only one empty cartridge in his pistol after the shooting, and he then replied that he had some shells in his pocket and that after he fired the first time he reloaded his pistol. Moreover, there was testimony on behalf of the State that some of the shots were fired from the inside of the house through the screen door and that at least one shot was fired through the screen door from the outside.

There were other eyewitnesses to the shooting, at least to the extent of seeing what the defendant was doing, although they could not see his wife who was on the inside of the house. One of these witnesses testified that he ''sighted'' his pistol at her through a window after he left the front porch, which indicated that he was not shooting spontaneously in self-defense upon seeing her at the window with a pistol pointed at him.

Then, too, the jury may not have considered that his story was reasonable, as required by the rule in the Weathersby case, supra, when he testified that when he got to the house and found the screen door hooked ''she was sitting down with a white piece of cloth in her lap'' and that she then ''got up and started unwinding it and got about two feet from the door and she shot twice''. He failed to explain why she would have been expecting him to leave the cafe and come home at that particular time, so as to be prepared for him upon his arrival by having her pistol wrapped in a piece of white cloth and resting in her lap when he got to the screen door, unless she had had good reason to think that he intended to follow her home from the cafe and kill her.

The proof shows that she fired four shots with a 38 calibre pistol, and the jury was warranted in believing that he fired one shot through the screen door at her with his 32-20 pistol either before or during the time that she was shooting at him, and that he thereafter went to the window and fired what may have been the fatal shot. He testified that when he fired at her through the window he was standing on the ground and that she was aiming her pistol at him, and it is contended that this would explain her arm wound and the bullet in her right chest being the result of only one shot from his pistol. However, the doctor who attended her for about 13 days immediately preceding her death, testified that the arm wound was not up the arm but across it just above the wrist.

■■ ■ We are of the opinion that the testimony presented an issue of fact for the determination of the jury on the question of whether or not the accused shot and killed his wife in necessary self-defense; and that the evidence is sufficient to sustain the verdict of the jury and the judgment and sentence appealed from should be affirmed.

Affirmed.

*Hall, Kyle, Holmes* and *Gillespie,* JJ., concur.